UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
PIETRO J. PARISI, JR.,        :
                              :
          Petitioner,         :    Civ. No. 17-1736 (NLH)
                              :
     v.                       :         OPINION
                              :
THE ATTORNEY GENERAL          :
OF THE STATE OF NEW JERSEY,   :
et al.,                       :
                              :
          Respondents.        :
_____:

APPEARANCES:

Pietro J. Parisi, Jr.
147556C 705
Special Treatment Unit
8 Production Way
P.O. Box 905
Avenel, NJ 07001

        *Petitioner Pro se*

Christine A. Hoffman, Gloucester County Prosecutor
Michael C. Mellon, Acting Assistant Prosecutor
Gloucester County Prosecutor's Office
Hunter & Euclid Street
P.O. Box 623
Woodbury, NJ 08096

        *Counsel for Respondents*

HILLMAN, District Judge

        Petitioner Pietro J. Parisi, Jr., presently committed in

the Special Treatment Unit in Avenel, New Jersey is proceeding

on an amended petition for a writ of habeas corpus under 28

U.S.C. § 2254.  ECF No. 4.  Respondents oppose the amended petition.  ECF Nos. 11 & 26.

For the reasons stated below, the amended petition will be denied.  No certificate of appealability shall issue.

I. BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the New Jersey Superior Court, Appellate Division ("Appellate Division") in its 2013 opinion affirming the Law Division's order denying Petitioner's motion to withdraw his guilty pleas:[1]

> The record shows that on March 26, 1996, defendant pled guilty to third-degree endangering the welfare of a child. N.J.S.A. 2C:24-4a.  The conviction arose from charges that defendant had sexual contact with a child under the age of sixteen.  Defendant received a sentence of three years probation, conditioned on serving 364 days in the county correctional facility and compliance with the requisite Megan's Law[2] conditions.  In December 1999, defendant signed a document acknowledging that, as part of the community supervision for life regulations, he could not live with a minor without the permission of

---

[1] The Appellate Division later incorporated this "detailed recitation of defendant's involvement with the criminal justice system" in its opinion denying Petitioner's postconviction relief ("PCR") appeal.  State v. Parisi, No. A-1078-14T3, 2016 WL 6518590, at *1 (N.J. Super. Ct. App. Div. Nov. 3, 2016) ("Parisi II").

[2] The colloquial name for New Jersey's Registration and Community Notification Laws, N.J.S.A. §§ 2C:7-1 to 7-11.

the parole board.

On January 17, 2003, defendant pled guilty to two counts of second-degree sexual assault, N.J.S.A. 2C:14-2, and one count of fourth-degree violation of community supervision for life, N.J.S.A. 2C:43-6.4. The sexual assault convictions stemmed from defendant having sexual relations with two children under the age of sixteen. Defendant received an aggregate sentence of eight years in prison with four years of parole ineligibility. Defendant continued to be subject to Megan's Law and community supervision for life.

On September 24, 2005, defendant filed an appeal. On October 28, 2005, defendant filed a motion to vacate his 2003 guilty plea, contending that he did not know that his guilty plea made him eligible for indefinite civil commitment after he had served his sentence. After the trial judge denied the motion on April 27, 2006, defendant amended his pending appeal to include this denial. We remanded the matter for a plenary hearing . . . for a determination of whether defendant understood that future indefinite confinement could be a possible consequence of his plea and for a reconsideration of defendant's sentence pursuant to State v. Natale, 184 N.J. 458, 495-96 (2005). State v. Parisi, Docket No. A-0582-04 (App. Div. May 23, 2007).

On September 12, 2007, the trial judge approved an agreement between defendant and the State whereby defendant acknowledged that he had been aware at the time of his 2003 plea of the possibility that he could be civilly committed and that he had been subject to community supervision for life since his 1996 plea. The State agreed to modify defendant's sentence to six years in prison with three years parole ineligibility. On May 27, 2008, defendant filed a motion to withdraw his guilty pleas, contending that the parole board had added new conditions to his sentence. The court denied the motion and defendant did not appeal.

In September 2008, defendant's son was born. Shortly thereafter, the Division of Youth and Family Services

> removed the infant from the custody of both parents.[3]
> Defendant then moved to withdraw his guilty pleas[4]
> because he was not informed that his convictions for
> child endangering and sexual assault could restrict his
> custody of or visitation rights to any minor child,
> "except upon a showing by clear and convincing evidence
> that it is in the best interest of the child."  N.J.S.A.
> 9:2-4.1a to b.  Defendant argued that, if he had known
> about this consequence, he would not have pled guilty
> either time. [T]he judge denied defendant's motion.

State v. Parisi, No. A-4901-09T3, 2013 WL 889260, at *1 (N.J.
Super. Ct. App. Div. Mar. 12, 2013) ("Parisi I").  The Appellate
Division affirmed the trial court.  Id. at *5.

Petitioner filed a PCR petition on March 22, 2013.  ECF No.
11-6 at 98.  The PCR court held oral argument on July 24, 2014
and denied the petition without an evidentiary hearing.  3T.[5]
Petitioner appealed, and the Appellate Division affirmed the PCR
Court, Parisi II, 2016 WL 6518590; ECF No. 26-6.  The New Jersey
Supreme Court denied certification on February 13, 2017.  State

---

[3] "The record is devoid of any documentation explaining the
reasons for the removal of the child from both the mother and
the father."  Parisi I, 2013 WL 889260, at *1 n.1.

[4] "The record does not contain this motion or any supporting
certifications."  Parisi I, 2013 WL 889260, at *1 n.2.

[5] 1T = Post-Conviction Relief Transcript dated September 12,
2007; ECF No. 26-2.

2T = Motion to Withdraw Guilty Plea Transcript dated July 11,
2008; ECF No. 26-3.

3T = Post-Conviction Relief Transcript dated July 24, 2014; ECF
No. 26-3.

v. Parisi, 160 A.3d 706 (N.J. 2017) (Table); ECF No. 26-7.

Petitioner filed his original petition for habeas corpus on March 13, 2017.  ECF No. 1.  The Court advised Petitioner of his rights and obligations under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  ECF No. 2.  Petitioner filed an amended petition on August 9, 2017.  ECF No. 4.  The Court requested that Respondent file an answer limited to "the issues of 'in custody' jurisdiction and timeliness."  ECF No. 6. Respondent answered that Petitioner was "in custody" for purposes of § 2254 and that Petitioner was "within the statute of limitations with respect to Indictment 02-09-0544 and Accusations 03-01-0105 and 03-01-0106 but out of time with respect to Accusation 96—03-0144."  ECF No. 11 at 2-3. Petitioner disputed this assessment.  ECF No. 13.

On July 14, 2022, the Court concluded Petitioner's challenges to Accusation 96-03-144 were presumptively untimely under 28 U.S.C. § 2244.  ECF Nos. 18 & 19.  The Court directed Respondent to file a full answer to the petition and permitted Petitioner to submit arguments in favor of equitable tolling. ECF No. 19.  Petitioner submitted equitable tolling arguments, ECF No. 22, and Respondent submitted a new brief and exhibits in

opposition to the amended § 2254 petition, ECF No. 26.[6]

II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the writ shall not issue with respect to any claim that was adjudicated on the merits by a state court unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254(d).  A state court decision is "contrary to"

---

[6] Respondent's new filing was filed under seal but was unaccompanied by a motion to seal in compliance with Local Civil Rule 5.3.  ECF No. 26.  The brief and exhibits contain documents that are publicly filed on the docket as part of Respondent's limited answer, ECF No. 11, and upon this Court's review do not contain information warranting a permanent seal.  Accordingly, the Court will direct the Clerk to lift the temporary seal.

Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

III. DISCUSSION

Petitioner presents three arguments for this Court's review:

I.   Mr. Parisi was denied his right to effective assistance of counsel and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution when his defense counsel failed to inform him that as a direct result of his guilty plea he would be giving up his right to custody and visitation to his own children.

7

II.  The Lifetime consequences and social stigma (Megan's Law Lifetime Registration and Community Supervision for Life) because of the Mr. Parisi's Strict Liability convictions violate his Eighth Amendment right to be free from cruel and unusual punishment.  In addition, the Petitioner is currently Civilly Committed as a sexually violent predator due to these Strict Liability crime.

III. Mr. Parisi was denied due process of law under the Fourteenth Amendment to the United States Constitution when despite the Strict Liability nature of his convictions he was subjected to lifetime punishment (Community Supervision for Life) and sever[e] social stigma. (Megan's Law and internet posting).

ECF No. 4 at 6-9 (emphasis omitted).

Initially, the Court ordered Respondent to file an answer limited to "the issues of 'in custody' jurisdiction and timeliness."  ECF No. 6.  Respondent conceded that Petitioner is "in custody" for purposes of § 2254 and asserted that Petitioner was "within the statute of limitations with respect to Indictment 02-09-0544 and Accusations 03-01-0105 and 03-01-0106 but out of time with respect to Accusation 96—03-0144."  ECF No. 11 at 2-3.  The Court previously concluded Petitioner's challenges to Accusation 96-03-144 were presumptively untimely under 28 U.S.C. § 2244.  ECF Nos. 18 & 19.  The Court directed Respondent to file a full answer to the petition and permitted Petitioner to submit arguments in favor of equitable tolling. ECF No. 19.

8

Respondent's subsequent filing appears to withdraw the claim that the challenges to Accusation 96-03-144 are untimely. See ECF No. 26 at 3 ("Admitted as to Accusation 96-03-144.  The application is timely.").  "[B]ecause the AEDPA limitations period is subject to equitable modifications such as tolling, it is also subject to other non-jurisdictional, equitable considerations, such as waiver."  Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002).  As Respondent has withdrawn its statute of limitations defense to Accusation 96-03-144, the Court will not dismiss those claims as time barred and will address the merits.

A.    Exhaustion

Respondent argues Petitioner failed to exhaust Grounds Two and Three.  ECF No. 11 at 10-11.  "[F]ederal habeas review cannot serve as 'a substitute for ordinary error correction through appeal.'  The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'"  Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)).  Before seeking relief in federal court, a state prisoner must "exhaust[] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  "Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his

9

federal claim before the state courts in accordance with state procedures." Shinn, 142 S. Ct. at 1732. This means "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Petitioner raised all three claims presently before the Court in his March 2013 PCR petition. ECF No. 11-6 at 98-101. He also raised them before the Appellate Division, Parisi II, 2016 WL 6518590, and before the New Jersey Supreme Court, ECF No. 11-4 at 98. Accordingly, Petitioner presented his claims to all levels of the New Jersey state courts and exhausted his claims.

B.   Ineffective Assistance of Counsel

Petitioner argues in his first claim that he was denied his right to effective assistance of counsel and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution because he was not informed at his original 2003 plea or at the 2007 resentencing that a state statute, N.J.S.A. § 9:2-4.1, would terminate his parental rights.[7] "Defense

---

[7] The statute currently reads in relevant part: "Notwithstanding any provision of law to the contrary, a person convicted of

counsel had a duty to inform the Petitioner that as a direct result of his plea he would forfeit his right to have custody and visitation with his own children.  Had defense counsel made the Petitioner aware; he would not have pled guilty."  ECF No. 4 at 6.  Petitioner submitted to the PCR court "the certification of his attorney who represented him at the plea hearing and who had given him the wrong advice.  Although counsel does not admit wrongdoing, he does certify that during the plea negotiations, the defendant made it clear to counsel that it was his desire to be with his children."  ECF No. 11-4 at 34.[8]  "Counsel certified his belief that the defendant would not have pleaded guilty if he had know [sic] that he would be restricted from having custody to or visitation rights with his children."  Id.[9]

"Defendants have a Sixth Amendment right to counsel, a

---

sexual assault under N.J.S. 2C:14-2 shall not be awarded the custody of or visitation rights to any minor child, including a minor child who was born as a result of or was the victim of the sexual assault, except upon a showing by clear and convincing evidence that it is in the best interest of the child for custody or visitation rights to be awarded."  N.J.S.A. 9:2-4.1(a).

[8] Neither party submitted this certification to the Court.  The Court accepts Petitioner's representation of what the certification stated.

[9] "Mr. Parisi had three children before being released from prison."  ECF No. 11-3 at 133.  The child born in 2008 was Petitioner's fourth child, and there is nothing in the record indicating that he was born as a result of an assault.

right that extends to the plea-bargaining process.  During plea
negotiations defendants are 'entitled to the effective
assistance of competent counsel.'"  <u>Lafler v. Cooper</u>, 566 U.S.
156, 162 (2012) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771
(1970)).  The state courts correctly identified <u>Strickland v.
Washington</u>, 466 U.S. 668 (1984) as the governing standard for
ineffective assistance of counsel claims.  <u>See</u> <u>Parisi II</u>, 2016
WL 6518590, at *1.  To succeed on his claim, Petitioner must
"show that counsel's representation fell below an objective
standard of reasonableness."  <u>Strickland</u>, 466 U.S. at 688.  He
must then show "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  <u>Id.</u> at 694.

"In the context of guilty pleas, the first half of the
<u>Strickland v. Washington</u> test is nothing more than a restatement
of the standard of attorney competence . . . ."  <u>Hill v.
Lockhart</u>, 474 U.S. 52, 58 (1985).  "The second, or 'prejudice,'
requirement, on the other hand, focuses on whether counsel's
constitutionally ineffective performance affected the outcome of
the plea process."  <u>Id.</u> at 59.  "In other words, in order to
satisfy the 'prejudice' requirement, the defendant must show
that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial."  Id.

Furthermore, "[w]hen a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below Strickland's standard.'"  Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).  "Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.'"  Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington, 562 U.S. at 105.

In denying the PCR petition, the PCR court relied heavily on its prior order that denied Petitioner's motion to vacate his guilty pleas and the 2013 Appellate Division decision affirming that denial.  See 3T28:7-10 (citing Parisi I, 2013 WL 889260). The PCR court noted, as it had when it denied Petitioner's 2009 motion to withdraw, that "[i]n December 1999, defendant signed a document acknowledging that . . . as part of his community

13

supervision for life, he could not live with a minor without the permission of the Parole Board." 3T:30:18-21.  The PCR court noted N.J.S.A. § 9:2-4.1 "provided before its amendment, that a person convicted of a sexual assault could not be awarded or visitation [sic] of his born – as a result of a victim of sexual assault, unless [it] was in the child's best interests." 3T38:5-10; see also Parisi I, 2013 WL 889260, at *3 ("When N.J.S.A. 9:2-4.1 was first enacted in 1995 . . . it simply provided that a person convicted of sexual assault of a minor, N.J.S.A. 2C:14-2, could not be awarded the custody or visitation rights of a minor child who was born as a result of, or was the victim of, a sexual assault, unless it was in the child's best interest.").  The statute was amended to its current language in 2000.  3T38:11-20.

> Additionally, the Legislature added an identical provision for a person convicted of criminal sexual contact, N.J.S.A. 2C:14-3, or endangering the welfare of a child, N.J.S.A. 2C:24-4.  N.J.S.A. 9:2-4.1b.  This prohibition did not "by itself terminate the parental rights of the person denied visitation or custody" and the parent remains obligated to support the child. N.J.S.A. 9:2-4.1c.

Parisi I, 2013 WL 889260, at *4.  The PCR court cited the Appellate Division's 2013 conclusion that "when defendant pled guilty to child endangerment in 1996, [N.J.S.A. § 9:2-4.1] did – did not affect his custody or visitation rights; and neither the

14

Court, nor the State, could have predicted a change in the law."
3T38:21-25 (citing Parisi I, 2013 WL 889260, at *4).  "Defendant
was not misinformed about the custody and visitation
consequences of the initial Plea.  Nevertheless, when the law
was amended, defendant, by virtue of his child endangering
conviction, became subject to its provisions."  3T38:25 to 39:5;
Parisi I, 2013 WL 889260, at *4.

The PCR court continued to adopt the Appellate Division's
reasoning, concluding that "[i]n 2003, when defendant pled to
two sexual assaults, the custody and visitation restrictions of
[N.J.S.A. 9:2-4.1] already applied to him because of his 1996
conviction."  3T39:6-9.  "It is undisputed that at the time of
this Plea, and when he entered the Plea in 2007, no one provided
defendant with information about these restrictions.  However,
since the custody and visitation restrictions had already been
triggered by the 1996 conviction, there was no additional
consequences of the second Plea."  3T39:9-16; Parisi I, 2013 WL
889260, at *4.

In addressing the ineffective assistance of counsel claim,
the PCR court noted that "the consequence to which defendant
alleges he was not informed is not nearly as dire or dispositive
as he claims" because N.J.S.A. § 9:2-4.1 "does not terminate
parental rights; it merely requires the defendant show, by clear

and convincing evidence, that custody would be in the best
interest of the child."  3T46:18-24.  "Even when parents have
not been convicted of any crime, custodial decisions require a
showing by a preponderance of the evidence that custody would be
in the best interest of the child.  There is a raising of the
standard here; however, it's hardly the immediate and dramatic
consequence that the defendant claims."  3T46:25 to 47:3.

The PCR court also found that "more importantly, the
defendant cannot credibility claim that he would not have
accepted the Plea Bargain. . . . .  If he had been aware of the
custodial implications, as the Appellate Division panel stated
when faced with the issue under N.J.S.A. . . . 9:2-4.1."
3T47:7-13.  "N.J.S.A. 9:2-4.1 applies to defendant whether he
had pled guilty to these crimes or not, because of his 1996
conviction.  This is the result of an amendment to the statute
in 2000.  Defendant cannot claim he should have been informed of
it before entering the Guilty Plea in 1996."  3T47:13-19.  See
also Parisi I, 2013 WL 889260, at * 4 ("Defendant is unable to
show prejudice by his lack of information before entering his
plea in 2003 because whatever the ultimate consequences of
N.J.S.A. 9:2-4.1, they were produced by the original plea in
1996.").  "I also do not find it reasonable to presume that the
defendant would not have accepted the Plea Agreement, based on

16

the dire consequences and penalties which he would have been subjected."  3T47:23 to 48:1.

"[I]n making litigation decisions, 'there is no general duty on the part of defense counsel to anticipate changes in the law.'"  Sistrunk v. Vaughn, 96 F.3d 666, 670-71(3d Cir. 1996) (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).  N.J.S.A. § 9:2-4.1 did not apply to Petitioner at the time of his 1996 guilty plea, which Petitioner conceded in his 2013 appeal.  See ECF No. 11-6 at 62 ("N.J.S.A. 9:2-4.1 did not pertain to Mr. Parisi when he entered a guilty plea to endangerment in 1996.").  Trial counsel was not obligated to anticipate an amendment to the statute in 2000.  Parisi I, 2013 WL 889260, at * 4.  From there, the state courts reasonably applied Strickland when they concluded that there was not a reasonable probability that Petitioner would have insisted on going to trial had he known about the amendment prior to his 2003 or 2007 pleas.

In § 2254 proceedings, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  See also Harrington v. Richter, 562 U.S. 86, 101 (2011) ("The

pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.").  "The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system."  Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (per curiam) (cleaned up). Accordingly, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"  Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (quoting Harrington, 562 U.S. at 103).

Petitioner's custody and visitation rights would have been curtailed under N.J.S.A. § 9:2-4.1 regardless of whether Petitioner pled guilty in 2003 or 2007.  The state courts concluded that there was not a reasonable likelihood that Petitioner would have proceeded to trial if he had known about N.J.S.A. § 9:2-4.1's amendment beforehand because the amendment was already appliable; the horse was already out of the barn. In other words, it is not reasonable to claim that one would

take a chance at trial to avoid a result of a guilty plea when that result already applied because of a prior conviction.  The fact that Petitioner signed the original community supervision for life conditions in 1999 "acknowledging that, as part of the community supervision for life regulations, he could not live with a minor without the permission of the parole board" further supports the state courts' conclusions.  See also ECF No. 11-3 at 41 (October 26, 2009 opinion denying motion to withdraw pleas as "although it was not specifically spelled out that Mr. Parisi would lose custody of and even visitation with his biological child, it is clear that defendant has been on alert for the past ten years that residing with a minor child would always be an issue.").  The state courts reasonably applied Strickland, precluding federal habeas relief.

C.   Megan's Law Challenges

Petitioner argues that Megan's Law lifetime registration violates his Eighth Amendment right to be free from cruel and unusual punishment as well as his Fourteenth Amendment due process right.  "The Petitioner's convictions amount to the conduct of statutory rape.  No violence or coercion was ever alleged.  Under New Jersey law, Furthermore, [sic] the Petitioner could not submit evidence that he had a reasonable belief that his victims were above the age stated for the

19

crime." ECF No. 4 at 8. "Courts have repeatedly held that strict liability violates Due Process when the consequences and social stigma are severe." Id. at 10. "New Jersey's 'Statutory Rape' law imparts strict criminal liability in reference to the Petitioner's knowledge of the victim's age. While this may be permissible to impose a term of imprisonment, the severe social stigma and consequences of other mandatory sentencing provisions causes this to run afoul of the Fourteenth Amendment." Id.

The state courts rejected these arguments on the merits. See 3T43:12 to 45:6; Parisi II, 2016 WL 6518590, at *1 (affirming "substantially for the reasons expressed by" the PCR court). Petitioner argues that "[t]he State Courts chose not to give any real consideration to Mr. Parisi's Eighth and Fourteenth Amendment claims." ECF No. 13 at 17. "The State Courts failure to address these issues in light of strict liability in any real way leaves this Court open to review them de novo." Id. at 18. However, AEDPA deference applies even when there has been a summary denial. Cullen v. Pinholster, 563 U.S. 170, 187 (2011) (citation omitted). The Court must apply the appropriate AEDPA deference. "In these circumstances, [Petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the" state courts' decision. Id. (quoting Harrington

v. Richter, 562 U.S. 86, 98 (2011)).

Petitioner cites no federal law supporting his arguments, conceding that his "claims are novel in the sense that he could find no case law where any Court, Federal or State has addressed the issues of sex offender registration as applied to a strict liability crime."  ECF No. 13 at 17.  He argues:

> Megan's Law and Community Supervision for Life impart a
> level of culpability that is not required for
> conviction.  Mr. Parisi has never argued that he should
> not have gone to prison for his crimes. He has always
> believed that he should have know [sic] better than to
> have sexual relations with someone who's age he had not
> ascertained assuredly.   That said he should not be
> punished like a predator that was looking to victimize
> an underage child.   This imputation of intent is what
> violates his right to Due Process.   In Mr. Parisi's
> 1996, case as soon as he found out that he had violated
> the law with an underage partner he attempted to turn
> himself in to police.   In Mr. Parisi's 2003, case the
> victim admits that she told Mr. Parisi that she was 18
> and that when he found out the truth he stopped seeing
> her.

Id. at 13.  The PCR court rejected Petitioner's characterization of his crimes, noting that he "admitted in multiple instances that he had sex with underaged female, ultimately resulting in impregnating her."  3T43:23-25.  "Despite his [contention] that he had a reasonable belief at the time that his partner was already reached the age of consent, this Court does not find that his conduct was remotely passive or unworthy of blame."  3T43:25 to 44:4.  The PCR court further noted that Megan's Law

21

had previously survived constitutional challenges in the New Jersey Supreme Court.  3T44:9-18 (citing Doe v. Portiz, 662 A.2d 367 (N.J. 1995)).

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'  In the context of a challenge to a sex offender registration requirement, the Court should focus on whether the registration requirement 'may be categorized as "punishment."'"  Farmer v. Harman, No. 4:18-CV-02216, 2021 WL 2222720, at *3 (M.D. Pa. June 2, 2021) (quoting U.S. Const. Amend. XIII; Artway v. Attorney General of N.J., 876 F. Supp. 666, 678 (D.N.J. 1995)).  See also Willman v. Att'y Gen. of United States, 972 F.3d 819, 825 (6th Cir. 2020) ("[T]o violate the cruel and unusual punishment prohibition, a sanction must be a punishment." (emphasis in original)).

The New Jersey Supreme Court "has consistently regarded the Megan's Law registration requirement as a legislatively imposed regulatory consequence of committing a sex offense . . . ." State v. Brown, 243 A.3d 1233, 1235 (N.J. 2021).  "[T]he legislative purpose of Megan's Law was to identify potential recidivists and alert the public when necessary for the public safety, and to help prevent and promptly resolve incidents involving sexual abuse and missing persons." E.B. v. Verniero, 119 F.3d 1077, 1097 (3d Cir. 1997).  See also State v. Perez,

22

106 A.3d 1212 (N.J. 2015) (describing the registration requirement as an "administrative obligation" distinct from a punitive consequence).  This is consistent with federal law.

The Third Circuit has concluded that the registration portions of Megan's Law are not punitive for purposes of the ex post facto, bill of attainder, double jeopardy, equal protection, or due process clauses.  Artway v. Attorney General, 81 F.3d 1235 (3d Cir. 1996).  It later concluded that the notification provisions of Megan's Law were not punitive for purposes of the double jeopardy or ex post facto clauses, E.B., 119 F.3d 1077,[10] and that New Jersey's Sexually Violent Predator Act was not punitive for Eighth Amendment purposes, Conover v. Main, 601 F. App'x 112, 115 (3d Cir. 2015) ("Because the SVPA is

---

[10] The Third Circuit rejected arguments that social stigma associated with Megan's Law notifications transformed the requirements into punishments.  "Dissemination of information about criminal activity has always held the potential for substantial negative consequences for those involved in that activity.  Dissemination of such information in and of itself, however, has never been regarded as punishment when done in furtherance of a legitimate governmental interest."  E.B. v. Verniero, 119 F.3d 1077, 1099–100 (3d Cir. 1997).  "[T]he Supreme Court has said that 'restrictive measures on sex offenders adjudged to be dangerous is "a legitimate nonpunitive governmental objective and has been historically so regarded."'" Bakran v. Sec'y, United States Dep't of Homeland Sec., 894 F.3d 557, 566 n.8 (3d Cir. 2018) (quoting Smith v. Doe, 538 U.S. 84, 93 (2003); Kansas v. Hendricks, 521 U.S. 346, 363 (1997)).

not 'punitive' in nature, 'the law is not a "cruel and unusual punishment" in violation of the Eighth Amendment.'"). See also A.A. ex rel. M.M. v. New Jersey, 341 F.3d 206, 214 (3d Cir. 2003) ("[T]he State's compelling interest in preventing sex offenses substantially outweighs any interest the Registrants may have in not having public – yet scattered –information compiled.").

The Court is persuaded by the weight of authority that Megan's Law's registration requirements are not "punishment" within the meaning of the Eighth Amendment.  See Cutshall v. Sundquist, 193 F.3d 466, 477 (6th Cir. 1999) ("We have already concluded that the [Tennessee Sex Offender Registration and Monitoring Act] does not impose punishment; it is regulatory in nature.  Therefore, it does not violate the Eighth Amendment's prohibition on cruel and unusual punishment."); Farmer v. Harman, No. 4:18-CV-02216, 2021 WL 2222720, at *3 (M.D. Pa. June 2, 2021) ("It would stand to reason, then, that . . . registration for being a sex offender is likewise not punishment.").

Petitioner asks the Court to find Megan's Law registration to be punitive as applied to his "strict liability" crimes.  "An Act, found to be civil, cannot be deemed punitive 'as applied' to a single individual in violation of the Double Jeopardy and

Ex Post Facto Clauses and provide cause for release." Seling v. Young, 531 U.S. 250, 267 (2001). Courts have construed Seling as extending to Eighth Amendment challenges. See Conover, 601 F. App'x at 115; Hydrick v. Hunter, 500 F.3d 978, 994 (9th Cir. 2007) ("[T]his 'punitive as applied' argument is foreclosed by Seling."), vacated on other grounds by 556 U.S. 1256 (2009); Turay v. Seling, 100 F. App'x 606, 608 (9th Cir. 2004) ("For the same reasons given by the Court [in Seling], 'as applied' Eighth Amendment and due process challenges must also fail when brought as habeas grounds.").

The New Jersey Supreme Court has consistently found the Megan's Law registration requirement to be civil in nature, and the weight of federal authority agrees. Therefore, Petitioner may not argue that the registration requirements are punishment "as applied" to him. His "as applied" Due Process challenge must also fail. The state courts' decisions are neither unreasonable applications of federal law, nor are they unreasonable in light of the evidence in the state court record.

D.   Community Supervision for Life

Petitioner extends his Eighth Amendment and Fourteenth Amendment challenges to the imposition of community supervision for life as part of his sentences. See, e.g., ECF No. 13 at 18 ("While Mr. Parisi's conduct (20 years) ago was morally

questionable, it did not display the predatory behavior from which Megan's Law and Community Supervision for Life were created."). "'Community supervision for life and its corollary parole supervision for life are merely indefinite forms of parole' and are also classified as punishment." State v. Hester, 186 A.3d 236, 243 (N.J. 2018) (quoting Riley v. New Jersey State Parole Bd., 98 A.3d 544, 555 (N.J. 2014)). Accordingly, the Eighth Amendment applies.

The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted). "A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." United States v. Burnett, 773 F.3d 122, 136 (3d Cir. 2014) (citing Solem v. Helm, 463 U.S. 277, 290-92 (1983)). "In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes." Id.

The PCR court rejected Petitioner's Eighth Amendment argument, noting that "[s]upervision for life is required – is a

required part of a sentence for the offenses that defendant has
pled guilty to . . . .  The Court does not pretend to carve out
an exception from that.  I don't find that's appropriate."
3T44:23 to 45:3.  "The Eighth Amendment only forbids sentences
that are 'grossly disproportionate' for a conviction for the
crime involved."  Rollins v. Slaughter, No. 19-13390, 2022 WL
2358387, at *17 (D.N.J. June 30, 2022).  "Generally, a sentence
within the limits imposed by statute is neither excessive nor
cruel and unusual under the Eighth Amendment."  United States v.
Miknevich, 638 F.3d 178, 186 (3d Cir. 2011).

    In 1996, Petitioner pled guilty to third-degree endangering
the welfare of a child, N.J.S.A. § 2C:24-4(a).  He pled guilty
to two counts of second-degree sexual assault, N.J.S.A. § 2C:14-
2, in 2003.  Both crimes have community supervision for life as
part of their sentences.  N.J.S.A. § 2C:43-6.4.  "If the
petitioner fails to demonstrate a gross imbalance between the
crime and the sentence, a court's analysis of an Eighth
Amendment challenge ends."  Rollins, 2022 WL 2358387, at *17.
"Thus, although the Appellate Division addressed Petitioner's
sentencing claims under the lens of state law, its reasoning was
neither contrary to, nor an unreasonable application of, clearly
established federal law."  Id. at *18.

    Petitioner's Due Process claim also fails.  "In December

1999, defendant signed a document acknowledging that, as part of the community supervision for life regulations, he could not live with a minor without the permission of the parole board." Parisi I, 2013 WL 889260, at *1.  At his resentencing in 2007, Petitioner stated under oath "that he had been aware at the time of his 2003 plea of the possibility that he could be civilly committed and that he had been subject to community supervision for life since his 1996 plea."  Id.; see also 1T11:8-15. Petitioner has been aware of the community supervision portion of his sentences since 1996, and his disagreement with the New Jersey Legislature's decision to require community supervision for life as part of the sentence for his crimes does not rise to the level of a due process violation.  The state courts' decisions are neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the

28

district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right.  As jurists of reason could not disagree with this Court's resolution of the claims, the Court shall deny Petitioner a certificate of appealability.

V.  CONCLUSION

For the above reasons, the Court will deny the amended habeas corpus petition.  A certificate of appealability shall not issue.

An appropriate Order follows.


Dated:  January 30, 2023           s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.